## TODD v. HARDIE, ET AL.

1. Where a witness testifies positively, that he was called on to attest a contract between the parties, his evidence should outweigh the testimony of many witnesses, who state collateral facts and circumstances which are inconclusive and at most only persuasive.
2. Where it is doubtful from the proof, whether personal property was sold, or mortgaged, the evidence that the sum advanced was greatly below its value, would be entitled to much weight.
3. The title of the purchaser of personal property, which was delivered, will not be affected by the failure of the seller to make a bill of sale, which he promised to do at some future time.

WRIT of Error to the Chancery Court sitting at Huntsville.

The plaintiff in error filed his bill against the defendants in November, 1836, in which it is substantially alleged that in October, 1828, he mortgaged, or conditionally sold to the defendant Hardie, a negro man named Jack, in consideration of money owing by him to Hardie, and of money then advanced by the latter to pay judgments which had been rendered against him. The aggregate amo nt of these several sums, was about four hundred dollars; that the transaction was not evidenced by any writing entered into between the complainant and Hardie.

It is alleged, that Jack, at the time the contract was made, was delivered to Hardie, and that he is in possession of the defendant Hill, who claims him under a purchase from the defendant Spence, (made in January, 1836,) who was the immediate assignee of Hardie. That a reasonable hire for the slave during the time he has been out of the complainant's possession would more than satisfy the sum for which he was pledged; yet Hardie, and those who have since had possession of him refuse to deliver him to the complainant, asserting that he was not mortgaged, but had been absolutely sold by him at the time he parted with the possession. The bill prays that an account may be taken of the value of Jack's hire, that upon an appropriation of a sufficient sum, to pay what may be due upon the parol mortgage to Hardie, then Jack be adjudged to be the property of the complainant and delivered up &c.

Hardie answered the bill, denying that he had received the slave from Todd as a security for money to be paid at a future day, and affirming that he purchased him fairly and *bona fide* for the sum of four hundred dollars, which was a fair price for him, and fully paid, either in cash, or by the extinguishment of debts due him by the complainant.

Spence denies all knowledge of the contract between the complainant and Hardie, and knew nothing of the claim set up by the former to the slave, but was informed by Hardie that he had purchased him. Relying on that information, he bought the slave of Hardie in 1829 or '30, for the sum of three hundred and fifty dollars, which he considered his value, as he was runaway at the time.

Hill declares his ignorance of the dealings between the complainant and Hardie; admits that in the fall of 1835, he purchas-

ed the slave in question for a full and valuable consideration paid to Spence, without intention to defraud any one.

Wm. Wright and Joseph Pickens, are also made defendants, but as their answer is not regarded by the court as material in the decision of the cause, no special notice will be taken of it.

On the part of the plaintiff, fifteen witnesses were examined. One witness testifies that he understood from both parties, that the slave Jack, was in Hardie's possession under a contract to work for the interest of money which the latter had lent the complainant to pay the estate of Richard Burdine, deceased, as well as money then owing Hardie by the complainant. Witness understood, that Hardie was to let complainant have more money to redeem a negro woman and child from a deed of trust held by W. D. Garner, but from whom he understood it, does not recollect. He afterwards understood that Hardie had bought Jack of complainant, in Huntsville, but heard the latter after that, deny he had sold him.

Another witness states that about the year 1828, as well as he recollects, the complainant was indebted to the estate of Richard Burdine and Wm. D. Garner, that Hardie lent him a sufficient sum of money to pay these debts, and as a security to indemnify its repayment, delivered to him the slave Jack, to hold in trust. Not long afterwards, there was a dispute between the parties, whether an absolute bill of sale should be given for Jack; Hardie contended for this, but Todd insisted upon giving "a lien or deed of trust." Witness understood from both parties that Jack was to remain with Hardie, and work for the interest of the money lent.

Ten of the witnesses state that Jack in 1828, was worth from $800 to $1200, and that his hire has been of the yearly value of $125 to $200. The others testify as to the disputes between the complainant and Hardie since that time, whether the transaction was an absolute sale or not; and also that Hardie lent the money.

Six witnesses were examined on the part of the defendants. One of whom states that he was under the impression that Jack was pledged for money borrowed; another testifies that in the fall of 1828, he was present at the counting room of Col. John Read, in Huntsville, when Hardie purchased the slave Jack of the complainant, for about four hundred dollars; witness knew Jack, who was then present and delivered, and says four hundred

dollars was a full price for him.  Witness, recollection is more distinct of the facts stated by him, because he, together with Mr. John T. Smith, was called on to witness the transaction.

The other witnesses examined for the defendants, state that negro men in the fall of 1828, were worth from three hundred and fifty to five hundred dollars, and that Jack was worth from four to four hundred and fifty dollars.

The chancellor was of opinion that the complainant's case was not made out by proof, and accordingly dismissed the bill at his costs.

S. Parsons, for the plaintiff in error.

McClung and Robinson for the defendants.

COLLIER, C. J.—The equity of the plaintiff's bill is not controverted, but it is insisted that its allegations are not only not sustained, but are actually disproved.  It is alleged in the bill that the slave Jack was delivered to Hardie by the complainant under a contract that the former should retain him in his possession as security for money due by the latter to Hardie.  This allegation is explicitly denied by Hardie, who declares in his answer, that he purchased the slave *bona fide*, for a full and fair consideration paid before and at the time of the purchase.  To overbalance the effect of this negative answer, the plaintiff relies upon the testimony of his witnesses who concur in testifying that the sum which Hardie paid him was less than one half the value of the slave, as well as the evidence of the two witnesses, who depose as to a loan of money, and a delivery of the property, as a security for its re-payment.  This evidence is unquestionably sufficient of itself to outweigh the answers.  One witness affirms positively that the money was advanced by Hardie as a loan, and that the slave was placed in his possession as a mere security for its payment.  Placing the deposition of this witness and the answer of Hardie in opposition, and the case stands in equipoise; but the testimony of the other witness, who states that Hardie held the slave under a contract to work for the interest of money, when taken in connection with the evidence in respect to his value, greatly inclines the balance in favor of the complainant.

Thus stands the case upon the plaintiff's proof.  Let us now examine it, as presented by the defendants.  Their witnesses all

concur in the opinion that Jack was not worth more than four, or four hundred and fifty dollars, at the time the transaction took place between the plaintiff and Hardie; one of them states his impression that he was pledged for money borrowed: another testifies that he was present when the complainant sold the slave to Hardie, for four hundred dollars, or thereabouts, and that he was called on to attest the sale. This latter witness says that the sum paid by Hardie, was the full value of Jack, and that as the day was far spent, a bill of sale was not then made, but was to have been executed at some future time. The positive evidence of this witness, relating as he does, time, place and circumstance, with so much exactness, considering his opportunity for acquiring correct information on the subject, must overbalance the testimony of the plaintiff's witness, who testifies that the slave was held by Hardie under a lien for the money avanced by him. In regard to the statement by one of the defendant's witnesses, that he was under the impression that Jack was pledged for money borrowed, it is entitled to little or no consideration; he does not show how or when that impression was induced, and certainly not from any thing that Hardie did or said.

The answer of Hardie, is certainly equally potent as evidence, with the testimony of the other witnesses of the plaintiff, one of whom states, that the slave was held as security, for money previous to the transaction at Huntsville, when a further advance was understood to have been made, and others express their opinions of his value when he was delivered to Hardie.

Where it is doubtful whether property was sold absolutely or transferred by way of mortgage, evidence showing that it was of much greater value than the sum paid for it, is entitled to great weight, and where there is an *equilibrium* of proof, may incline the scale in favor of a conditional transfer. But the evidence on this point is by no means uniform, nor is the allegation of the bill in harmony with the plaintiff's proof; it takes a medium between the extremes of the testimony. While the complainant alleges the value of Jack to have been seven hundred dollars, some of the witnesses say, he was worth from one thousand to twelve hundred. The defendant's witnesses place his value at four hundred or four hundred and fifty dollars, and this, if we were to speak from the history of the times, we should think a fair estimate. Property of every description was greatly depressed in 1828. We had

not recovered from the extensive embarrassment caused by high prices previous to 1819, the consequences of which produced the pressure commencing in that year, when the revulsion of 1825, again threw us back, and retarded for years, a return to activity in business and apparent properity. These influences were still continuing at the time the transaction took place. But it is needless thus to consider the evidence, to determine which of the witnesses upon a matter of opinion formed from a recollection of things as they existed twelve years previously, is entitled to the highest degree of credit; for we have already intimated that the defendant's testimony when connected with his answer, preponderates over the plaintiff's proof.

But it was argued for the plaintiff, that even conceding the transaction between him and Hardie was intended to be an absolute sale, yet as it was never consummated, the title of the former was not divested, and he was still entitled to recover the slave. If the answer of Hardie, and the testimony of Parker, are to be regarded, there can be no question that there was not only an intention to sell but an actual sale. Hardie affirms it positively, and Parker declares that he was called on by the parties to attest it; that the plaintiff delivered the slave to the former, remarking that he was his (Hardie's) property. This was certainly intended to transfer the title, and what was said about the exetion of a bill of sale, at a future and more convenient time, serves merely to show that Hardie was to be furnished with written evidence of ownership.

We are satisfied that the cause was correctly determined by the chancellor, and his decree is consequently affirmed.